May it please the court, my name is George Ferides appearing on behalf of the petitioner Harbhajan Singh and his appeal of the Board of Immigration Appeals' decision. In the present case, the Board of Immigration Appeals upheld the immigration judge's decision that petitioner had engaged in the persecution of others and was thereby ineligible for asylum and withholding of removal relief. Petitioner argues that the Board of Immigration Appeals' decision is not supported by substantial evidence. Specifically, petitioner argues that although the BIA conducted substantial analysis into determining that petitioner had participated in alleged mistreatment of others, the Board of Immigration Appeals did not specifically address the issue of whether or not the alleged mistreatment rises to the level of persecution based on one of the five enumerated grounds. The two incidents upon which petitioner was declared ineligible for asylum relief occurred in 1971 while he was a member of the Indian Army and was stationed at the border of Pakistan and India. The sole evidence in the record establishing his participation in conduct on the Indian-Pakistani border was solely his testimony at the hearing. He testified that on one occasion in 1971, he participated in rounding up Bangladeshi civilians for purposes of ascertaining information from them, of extracting information from them about the defenses of the enemy army, the Pakistani army. The government in this case, as well as the Board of Immigration Appeals, implied that his participation rises to the level of past persecution based on political opinion. Petitioner, in his testimony before the immigration judge, steadfastly and emphatically denied that. He testified clearly and consistently that the sole reason and the sole purpose of rounding up and interrogating Bangladeshi civilians in 1971 was for the legitimate purpose of ascertaining the enemy's defenses. In fact, he testifies later on in cross-examination on page 138 of the record, I believe, was on the bottom of the page 138, but your purpose in seeking out these civilians and when he was asked, but your purpose in seeking out Bangladeshi civilians was to find those who had information about the Pakistani army. Is that correct? And later on, he says, no, it was not it was not that which countries they supported. It was he was just I don't think I have the right page, actually. Well, sir, you only this page 138. Well, sir, you only sought out these civilians that you thought supported the Pakistanis. Is that true? No, we did not select such a person like that. So you so then you just picked random civilians to round up. No, this indicates that that there was a specific purpose, a legitimate purpose for pursuing Bangladeshi civilians and that it was not on account of the fact that they were supporting the Pakistani army. Rather, it was merely incidental that they were what they were being detained for was solely for the purpose of extracting from them information regarding their knowledge of the Pakistani army. Furthermore, the mistreatment they suffered, although it's limitable that such conduct occurred, is clearly clearly does not rise to the level of persecution because they were detained based on the record pages 103 to 111. It's it's clear that they were detained for one day, were ordered and that the petitioner was ordered not to beat them for more than five minutes and to only beat those who did not cooperate by giving it the information they sought. And once that information was sought, they were subsequently released. Those who did give that information, those who were not, were beaten for a limited amount of time and only on one and only for one only on one occasion. And very few required any any type of medical treatment pursuant to these factors. The petitioner argues that the board erred by construing that incident as persecution that rises to the level of persecution based on enumerated ground. The second incident involves another incident in 1971 regarding the alleged persecution of Pakistani POWs. The Board of Immigration Appeals once again concluded that the harm suffered by Pakistani POWs was not only due to the fact that the incident was perpetrated but also implied that it rose to the level of persecution based on membership in a particular social group. Petitioner argues that he testified clearly on the record that the POWs were mistreated on one occasion and one occasion only and solely for and solely on account of solely for the purpose of retaliation for the conduct perpetrated against their own POWs that were captured by the Pakistani forces. Petitioner would therefore argue that such revenge in this context does not does not rise to the level of persecution based on any of the enumerated grounds. Did you represent him at the hearing? Yes, Your Honor. What? Yes. How did this information ever come out? Petitioner was questioned on cross-examination regarding his activity with Indian Army because of the statements he gave at his asylum office interview. At the hearing, there was very little direct testimony because there was no question that he had testified that he was a credible witness pursuant to his asylum office interview and the statements he made in his asylum application. Therefore, the issue addressed at the immigration hearing was solely whether or not he participated in the persecution of others. Petitioner would argue that the second incident constitutes the primary focus of the Board of Immigration Appeals as well as the immigration judge and that it's simply the revenge that the Indian Army pursued against the Pakistani POWs was not on account of membership in a party. They were being beaten on one occasion because they were soldiers who had been part of the enemy forces that had persecuted their own POWs. In neither instance, whether it's the detainment of the Bangladeshi civilians or the detainment of the POWs, was the petitioner on behalf of the Indian government trying to stifle a political opinion or the expression of a religious view. The fact that they were being persecuted had nothing to do with their membership in a particular social group or any of the other enumerated grounds. And if there are no further questions, I'll defer to the government and reserve the rest of my time. Thank you very much. May it please the Court. My name is Victor Lawrence and I represent the Attorney General. This Court, again, should deny this petition for review. This petitioner is an admitted persecutor on the basis of nationality and political opinion. Accordingly, he is ineligible for asylum, withholding, and also the Convention Against Torture. I would give you the cite to 208.16d.2 and also 8 U.S.C. 1231 B.3.B. Roman numeral 1. Well, looking at the BIA opinion, they don't seem to make a specific on account of determination, do they? They implied it. They imply it. Well, remember that what happens is once the ‑‑ there is evidence that a particular petitioner has engaged in persecution, the burden shifts to the applicant to show by burning proof of the preponderance of evidence that he did not engage in persecution on the basis of nationality and political opinion. All right. So he testifies that we were just ‑‑ we were trying to get information. And what's the counter evidence in the record on that? Well, first of all, I would dispute that the Board of Immigration Appeals did not explicitly find that the persecution was on account of ‑‑ first, on the first page, page two of the record, in the bottom paragraph, the Board of Immigration Judge sets the standard of any person who ordered, incited, assisted, et cetera, on account of race, religion, nationality, membership in a particular social group or political opinion, that they are ineligible for asylum and withholding. So which ground did they rely on? I believe that they relied on both nationality and political opinion. You can't tell that from the opinion. You can maybe apply it. So the difficulty I have with this argument is often we hear the flip side. And when you or one of your colleagues comes and argues and they say, look, there's no proof on account of, these people were just being rounded up for questioning in connection with a crime or a military, and that isn't sufficient to meet the on account of problem. And we take that argument seriously. But here's the flip side of that. So tell me how you distinguish those circumstances in this case, given the evidence that they're just rounding up these people and questioning them. Well, because you're ‑‑ when they talk about rounding up a group of Bangladeshis Yeah. or rounding up a group of people who are supporting the Pakistani army, implied political opinion, you can, regardless of the petitioner's statement saying that he denied that they were seeking out those people for either of those reasons, just the very fact of it, that they're rounding up a group of Bangladeshis, seems to be perhaps a mixed motive. There's nothing in the record that would suggest that. And this guy was credible. The petitioner was found to be credible, I agree. Right, right. But, no, there's plenty in the record to suggest that the prisoners of war were people who were supporting the Pakistani army. Well, we're talking about the first incident where they were trying to get information about the fortifications and their plans. That's what they wanted. And it could have been, if they thought the Pakistani had more or the Bangladeshi had more, they got them there for that reason, get that information. Well, I mean, you could still make the argument, I think, that in addition to getting them for that reason, those people were members of a particular nationality. Sure, but those people had information as a result of their nationality, being Bangladeshis, and they were sought out to get that information from them. Right, but if your logic holds, then we're going to grant a whole lot of other cases on the other side of the ledger. Let me attack you from another perspective. Would you say this four strikes with a bamboo stick over a five-minute period was severe? That's the angle that I was expecting to be. What? You're only halfway through your argument. Right, I was expecting a question of that nature, yes. I think the combination of all the persecutory acts. No, no, focus on this one. Was that severe? Yes. Yes or no? The answer is yes. When you consider that you're talking about more than one person, you're talking about beating each person for a period of five minutes with a three-foot-long bamboo stick. I would suggest that. Four strokes. Where are you getting the four strokes from here? Somewhere from the record. You gave me pause there, because I think the record is different. They talked about being beaten for five minutes at a time per person with a three-foot-long bamboo stick. I think when you capture a group of people and you have somebody going around with a three-foot-long bamboo stick, beating people on the back and legs, each one of them for five minutes at a time, that's pretty severe persecution, I would argue. Why? You're not on the other side of the ledger. Some of your colleagues aren't going to be very happy with you. Well, I understand your point, Your Honor. But at the same time, when you consider the other instance where this particular petitioner ordered people below him to take a rifle butt and beat ten Pakistani prisoners of war in the head and body until they were beaten unconscious, that is severe persecution. Well, then the question is, his testimony as it was a reprisal. So how does it become a person on account of political opinion? The reprisal is that they were supporting the Pakistani army. I don't think that's true. I think his testimony is because they did these things to our unit, we're going to do it to them. Yes, but anybody looking at those facts, I suggest, Your Honor, that, yeah, these people did horrible things to them, and then they get caught, and he gives this order out to beat these people to their unconscious. Now, you ask yourself, is he doing that only because they did these things? Or what was the motive? Well, he's not going into other prisoners. Well, but what was the motive of the people that did the bad acts to his people? The motive was because they were supporting the Pakistani army. There was a clear motive. It was a politically motivated act by the other group to do these bad things to his people. So he went back, and, yes, he did reprisal, but it's politics. It's related to politics. I guess if any of these other people were applying for asylum, you'd have to say they've got a clear case, right? Not past persecution. Well, given that, I think you're going to have a hard time finding these exact people. I might agree to that. But, no, I think we have to apply it equally. No, I understand. And I don't think I'm being disingenuous by saying that this is severe persecution, notwithstanding. But what the other side had done was kill the people. I'm sorry? What the Indian unit had done was to kill them. They killed them, and they hung them up by trees, and then, right. But that was politically motivated. They were doing that in support of the Pakistani army. Then he gives the order to take these prisoners of war, and, you know, part of it was retaliation. The other part was certainly to, because those people had supported the Pakistani army, and that's why we're going to have to retaliate against them politically motivated. But they didn't treat the other POWs that way. They just wanted to retaliate. So they just took this few. If your argument holds, why didn't they beat up everybody who was a prisoner of war? Why didn't they beat up everybody? Mm-hmm. Well, where do you get the testimony that they did not beat up other POWs? Some place in the record said they selected just these few. Well, I would still argue, and I'll accept that. We can both go back and read the record. Right. Not so many of these cases. No, I understand that. I might have fixed important facts in my head somewhere. Right. But in any case, even if they selected those people who did these acts, I would still say it's a mixed motive of why they chose those people and why they ---- There's no evidence of that. You have to infer it. Isn't that right? Yeah. But inferring is what happens all the time with imputed political opinion cases. You're inferring a political opinion to those people. And that's what's happening here, Your Honor. It's really no different. I mean, the reason why those people did horrible acts to his people was because of the fact that they were supporting the Pakistani army, clearly politically motivated. He gives the order to go ahead and beat these people to their unconscious. Yeah, retaliation was certainly arguably a part of that. But it was also because he was taking a political opinion against those people who took a political opinion against him. And if it's inferred, it's inferred. But there's nothing wrong. It's a clear inference from the record. And given that once you establish ---- they have the burden of proof to establish by a preponderance of evidence that once we showed a mandatory bar to asylum, they have a preponderance of the burden of establishing by a preponderance of evidence that they can get around that. And they don't show that. They can't show that. I find this a tough case, counsel. I accept that. But, Your Honor, that's where the standard comes in. And I want to reemphasize that. Because it's a tough ---- it is a difficult standard. And the standard is in the government's favor here. Substantial evidence standard, unless any reasonable adjudicator would be compelled. Well, I'm looking for that. I'm looking for that substantial evidence. That's ---- I understand the standard. The substantial evidence is that ---- You get it only from inference, I think. And maybe ---- Sure. The testimony was there were 1,000 people in the camp and there were 11 POWs that were taken out out of one section to be beaten. I think that's the reference you're ---- Okay. I accept that. But even still, you're talking not just retaliation, but you're talking because those people took a political side in this war and they were being retaliated against by this particular Petitioner as a result of the political decision that they made to do these horrible acts to his people. So it is a clear inference, Your Honor, that the reason why he did these horrible acts ---- You know, we're talking ---- I know you have to in your legal analysis make this on account of ---- find the angle here. But we're talking pretty severe acts here. I agree. I've got no sympathy for this guy. Okay. But in addition, even without the sympathy, I mean, the hard acts that he took of ordering these 11 POWs to be beaten until they're unconscious and then in fact beating them until they're unconscious or at least 10 of them until they were unconscious. Yeah. He ordered it. He didn't do it, he said. It doesn't matter. He relied on the ---- and I don't think we have a case on that. But the Seventh Circuit has said it doesn't matter. And Federico says it doesn't matter. All right. Federico is the Supreme Court. Mr. Lawrence, you're asking where that was in the record. It's 109 where the question is how many times do you estimate you would strike this man within the five-minute period. And the answer is likely would give them four or five stick beatings during that investigation. Right. And all right. I accept that. But did four or five or six beatings during the investigation? The question was ---- I'd say that that answer is a little nonresponsive. They asked how many times do you strike him. No, really. Well, I don't know. It's a bit ambiguous. All right. I'll give you that. You're giving a very effective past persecution argument. Somebody may hire you to represent some of the prisoners here. No, but seriously, you know, these are ---- these were bad acts. It's 20 years ago, though, too, right? Yeah, but, you know, there's no statute of limitations. We throw Nazis out, you know, for stuff they did during World War II. The fact that there was a long period of time between the time that these acts happened and the current day is really irrelevant. He was pretty candid. This all came out with the asylum officer interviewing him, said how the government ---- Yeah. And he, contrary to the last case, he also admitted this stuff in front of the immigration judge. Yeah. But just denied the Anaconda crime problem. He was a soldier who didn't see anything wrong with it. Yeah. Okay. I think we have your argument in hand. Okay. Thank you. Thank you. Rebuttal. Respondent's counsel has argued that, based on the record, we can infer that persecution was based on one of the projected grounds. And although I would like to agree with him when the shoe's on the other foot, you see, in this case, it is imperative to acknowledge that Petitioner did testify credibly, but for the fact that he explicitly disavowed throughout the record, in Pages 103 to 111 and Pages 137 and 138, that the purpose ---- he explicitly disavowed that the purpose of the harm was on account of any of the five enumerated grounds. The second episode is tougher for you than the first. Oh, of course. In the first episode ---- I mean, you have severity of beatings. You have people selected out for retaliation. As the Court has already pointed out, it wasn't isolated. They singled out 11 prisoners out of many. And that it was ---- and Petitioner's consistent testimony that the purpose of this was not on account of one of the five enumerated grounds. And where his testimony is the sole evidence in this case regarding issue of his ineligibility for asylum and withholding a removal, there's simply not substantial evidence justifying the Board's decision in this case. He's explicitly disavowed on the record that the persecution or the harm inflicted was on account of one of the five. In the context of the revenge or the retaliatory action, in the context of the second incident, is not of the kind that would rise to the level of any enumerated grounds. And I would only like to add in conclusion that here we can clearly see a case where the Indian Army is not clearly trying to prevent a political opinion or the expression of a religious view in the context of the Bangladeshi civilians. They were not trying to prevent the Bangladeshi civilians from supporting the Pakistani Army. They only detained them for one day to ascertain some information, beat those who did not cooperate, and then sent them on their way. And then based on the treatment of the ---- mistreatment of the POWs, while clearly lamentable, the same argument can be applied. And I thank you for your time. Thank you, counsel. Thank you very much. Oh, and one last thing. Petitioner asks, of course, that the case be remanded for consideration of the merits of his asylum claim in the event that the Court finds that the board's decision was erroneous. Yes. That the merits of his claim are before us. The case as heard will be submitted. The next case on the oral argument calendar is Oye or Way. We mispronounced it, I'm sure, versus Ashcroft. What did you say? Way.
judges: B. Fletcher, Noonan, Thomas